UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:17-CR-25-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| PETE ANTHONY TYNDALE, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Pete Tyndale orally moved, on the first morning of trial, after *voir dire* began, to strike the entire venire. *See* DE #338 (Minute Entry noting oral motion). Tyndale's complaint concerned "the racial make-up of the venire," which contained 1 African American[1] potential juror (out of 100+). *See* DE #367, at 1-2.[2] The Court, "noting timeliness issues," contemporaneously heard oral argument and directed Tyndale "to file a proper written motion supporting the argument." *See* DE #338. After an extension of time, *see* DE #356 (Minute Entry), Tyndale filed a "Supplemental Memorandum of Law and Data Regarding Motion to Strike Entire *Voir Dire* Panel." DE #367.[3] After another extension of time, *see* DE #381 (Minute Entry), the United States responded. DE #384 (Response). The matter is ripe for consideration.

---

[1] Following Tyndale's lead, the Court intends the terms "Black" and "African American" to have "interchangeable" meaning. *See* DE #367, at 1 n.3. Tyndale himself identifies as "Black." *Id.* at 1.

[2] This does not affect the outcome, but the Court notes that the lone African American venireperson was, in fact, chosen for petit jury service in the case.

[3] This document replaced DE #366. *See* DE #367, at 1 n.1. The Court did not consider the premature DE #366 in the analysis.

1

Tyndale identifies three potential legal bases for the motion: (1) the Sixth Amendment, (2) the equal protection guarantee of the Fifth Amendment,[4] and (3) the Jury Selection and Service Act (JSSA). *See* DE #367, at 2.

First, the "Sixth Amendment requires that the jury venire from which a jury is selected represent a 'fair cross-section' of the community." *United States v. Odeneal*, 517 F.3d 406, 411-12 (6th Cir. 2008). "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.*[5]

Second, a "defendant challenging a venire on equal protection grounds bears the burden of showing that the venire was selected in an intentionally discriminatory manner." *Allen*, 160 F.3d at 1104. A "defendant may establish a *prima facie* case of such discrimination by making one of two showings: (1) that the defendant's race was substantially underrepresented on the particular venire from which the defendant's jury was selected AND that the venire was selected under a practice providing an opportunity

---

[4] "Although [Tyndale] invoke[s] both the Fifth and Fourteenth Amendments, [his] claims are based on federal government action, not the action of a state, and are thus governed by the Fifth Amendment." *United States v. Ovalle*, 136 F.3d 1092, 1104 n.14 (6th Cir. 1998); *see also id.* at 1095 n.2.

[5] The United States does not dispute satisfaction of element 1, *see* DE #384, at 2, but it is Tyndale's burden to "establish" "all three elements . . . before the government is required to justify an infringing selection procedure." *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998).

2

for discrimination; or (2) that there has been systematic, long-term underrepresentation of defendant's race on jury venires." *Id.* at 1104-05.[6]

Third, the JSSA provides that it "is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to . . . petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Further, § 1862 prohibits exclusion of any citizen "from service as a . . . petit juror . . . on account of race [or] color[.]" Section 1867 provides the "exclusive means" for "challenging compliance with selection procedures." *See United States v. Johnson*, 40 F. App'x 93, 96 (6th Cir. 2002). "Typically, challenges brought under the JSSA are reviewed under the same standard as a Sixth Amendment claim of denial of a jury representing a fair cross section of the community, which requires a showing of underrepresentation of a distinct group." *Ovalle*, 136 F.3d at 1099; *see also Allen*, 160 F.3d at 1102 (calling the JSSA test "essentially identical" to the Sixth Amendment test and again laying out elements); *United States v. Wesley*, No. 15-cr-20718, 2017 WL 2590487, at *6 (E.D. Mich. June 15, 2017) (holding that the same "standard applies regardless of whether

---

[6] *Ovalle* held that in "order to establish a prima facie case that a jury was selected in violation of a defendant's right to equal protection, the defendant is required to meet [the following] three-part test[:] . . . First, he must establish that the group excluded from the . . . jury is one that is a recognizable, distinct class capable of being singled out for different treatment under the laws. Second, he must establish that the selection procedure . . . is susceptible to abuse or is not racially neutral. Finally, he must establish the degree of underrepresentation occurring over a significant period of time by comparing the proportion of the excluded group in the total population to the proportion serving as . . . jurors." 136 F.3d at 1104; *see also* DE #367, at 3 (Tyndale setting out similar 3-part test from the Eleventh Circuit). The Sixth Circuit clarified, however, in a decision issued between *Ovalle* and *Allen*, that *Ovalle*'s test "does not appear to address claims of defendants who would complain about the low number of African Americans in a jury pool." *United States v. Spearman*, 166 F.3d 1215, No. 96-1887, 1998 WL 840870, at *10 (6th Cir. Nov. 17, 1998) (table). *Allen*, which did not cite or acknowledge *Ovalle*, provided clarity concerning equal protection challenges to venire composition that *Ovalle* lacked.

3

the claim is brought under the Sixth Amendment or the Jury Service and Selection Act"). "This is justified because the purpose of the Sixth Amendment and the Act, and § 1861 in particular, is to entitle litigants in federal court to 'the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.'" *Ovalle*, 136 F.3d at 1099. Tyndale does not challenge, or even reference, "the district's jury selection plan." *See Allen*, 160 F.3d at 1102. The Eastern District's plan is available on the Court's website. The Sixth Circuit approved the last revision months before this trial.

The Court rejects Tyndale's motion to strike the venire on several independent grounds. First, the Court holds that Tyndale's motion under the JSSA is time-barred. A defendant must file a JSSA motion "before the voir dire examination begins, or within seven days after [he] discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier[.]" 28 U.S.C. § 1867(a). This timeliness requirement "prevent[s] dilatoriness and . . . ensure[s] the rapid disposition of claims, particularly those that are spurious. It is to be strictly construed, and failure to comply precisely with its terms forecloses a challenge under the Act." *Ovalle*, 136 F.3d at 1098; *see also United States v. Young*, 570 F.2d 152, 153 (6th Cir. 1978) (per curiam) (holding strict compliance with time limits of Act is required). Here, the London Division's Jury Administrator confirmed with the Court that the juror information sheets, which list each juror's race, were available to all counsel in the case by December 21, 2018. [The Court had guaranteed their availability by no later than December 26, 2018. *See* DE #257 (Minute Entry), at 1 ("The Court will ensure relevant juror documentation is available to counsel **two weeks** prior to trial." (emphasis in original)).] Tyndale, thus, "could have discovered, by the exercise of

4

diligence," the grounds for the motion to strike the venire as of December 21, 2018, and unquestionably no later than December 26, 2018.[7] This means that the oral motion, made on January 9, 2019, falls outside § 1867(a)'s 7-day window. Tyndale's "failure to file within th[e] seven-day window bars him from raising his claim under the JSSA." *Ovalle*, 136 F.3d at 1099. Even if he had until *voir dire*, the motion came after the swearing of the panel and commencement of questioning. It was, under any formulation, tardy. *See* 28 U.S.C. § 1867(a); *United States v. Boulding*, 412 F. App'x 798, 801 (6th Cir. 2011) (holding JSSA claim "time-barred" because, *inter alia*, "defendants raised their objection . . . after voir dire had begun"); *United States v. Fantroy*, 146 F. App'x 808, 813-14 (6th Cir. 2005) (holding JSSA claim "time-barred" because "Fantroy and Ameen raised their challenges under the JSSA after voir dire had begun, thereby beyond the time limitations contained in the statute"); *Young*, 570 F.2d at 153 (mandating that the "requirements" of § 1867(a) be "strictly enforced").

Second, the Court globally rejects Tyndale's striking theory due to his substantive concession that he is entitled to no relief on element 2 of the prima facie Sixth Amendment case and the related prong (requiring substantial underrepresentation) of the prima facie equal protection case. *See* DE #367, at 4 ("[T]he data does [sic] not appear to provide

---

[7] The Jury Administrator also indicated that Tyndale's counsel did not, in fact, pick up the information until January 10, 2019—after *voir dire* began. That Tyndale inexplicably eschewed *actual* discovery of the information does not impact when he "*could have* discovered" it. *See also, e.g., Omotosho v. Giant Eagle, Inc.*, 997 F. Supp. 2d 792, 798 (N.D. Ohio 2014) (finding compliance with § 1867's time requirement, in a civil case, only because "Plaintiff could not have discovered the grounds for his motion earlier than the day of *voir dire*, when he was able to observe, for the first time, the racial composition of the jury panel"). Tyndale, unlike Omotosho, could have discovered "the racial composition of the jury panel" at least two weeks prior to "the day of *voir dire*," a protection the Court specially ensured in this case. *See* DE #257, at 1.

5

sufficient evidence that Black individuals are underrepresented in the venire."); *see also* DE #384, at 4 (noting Tyndale's "apparent concession" on this point).

Third, the Court also globally rejects the motion and supplemental memorandum due to Tyndale's utter failure to (even attempt to) show (as variously phrased in *Odeneal* and *Allen*) that any underrepresentation is due to systematic exclusion of African Americans in the jury-selection process, that the venire was selected under a practice providing an opportunity for discrimination, or that there has been systematic, long-term underrepresentation of African Americans on District venires. Tyndale's "challenge to the composition of the jury venire fails because [he] did not present any evidence that the underrepresentation of African Americans was due to systematic exclusion of that group in the jury-selection process[.]" *United States v. Suggs*, 531 F. App'x 609, 619 (6th Cir. 2013) (citing cases); *see also, e.g.*, *Allen*, 160 F.3d at 1104-05; *United States v. Riddle*, 691 F. Supp. 2d 737, 742 (E.D. Mich. 2010) (favorably citing prior examples finding no violation where "there was only one black juror in a pool of 104 potential jurors" and where "the venire contained only one African-American out of 500 prospective jurors"); DE #384, at 5 (noting Tyndale's failure to point to anything "that evidences any form of systemic discrimination whatsoever"); *id.* at 7 (observing that Tyndale "presents no evidence of systematic, long-term underrepresentation of Black individuals on jury venires in this District, Division, or Docket"*)*; *Odeneal*, 517 F.3d at 411-12 (approving the use of "voter registration lists" for calling potential jurors*)*; *United States v. Watkins*, 691 F.3d 841, 850-51 (6th Cir. 2012). Tyndale makes no substantive argument regarding or attempt to satisfy the related element(s) of a prima facie equal protection case as expressed in *Allen*

(or, indeed, even *Ovalle*). He does not allege—much less establish—that "the venire was selected in an intentionally discriminatory manner." *Allen*, 160 F.3d at 1104.

For these cascading reasons, the Court **DENIES** Tyndale's oral motion, as supplemented in writing, to strike the entire *voir dire* panel.[8]

This the 4th day of February, 2019.

Signed By:
Robert E. Wier
United States District Judge

---

[8] At the conclusion of the supplemental memorandum, seeming to recognize the theory's lack of merit, Tyndale seeks no actual relief and instead "simply asks . . . that his Motion be persevered [sic]." DE #367, at 4. This may mean "preserved." The Court has processed the oral motion and supplemental memorandum on their terms, and the law governing preservation will define whether Tyndale has properly preserved any theory, on appeal or otherwise. The Court need not wade into that fray here.